Hall, Justice.
Has the complainant in this bill, who, Dy appointment of the court of equity, succeeds the original assignee named under k voluntary assignment made by the Bank of Borne, a right to maintain this suit, either under the terms of that assignment or by virtue of any provision of law, against the defendant, on account of a collusive arrangement charged to have been entered into between him and those to whom he sold the bank, and who afterwards re-organized it as its stockholders, directors and other officers, whereby the creditors and others dealing with the corporation were alleged to have been defrauded and injured? The question for our consideration is, not whether the creditors of this insolvent corporation can maintain a suit against this defendant for his participation in this alleged fraud, which it is insisted has resulted in loss and inj ury to them, but whether its voluntary assignee has authority to institute and carry on such a suit for their benefit.
1. As to this right of creditors against this defendant, we express no opinion, further than to say that courts will always lend them aid as a favored class, and will afford them every facility and remedy to detect, defeat and annul every effort to defraud them of their just rights. Code, §1945. But Avere this a suit at their instance, to accomplish this object, we would not be able, on account of the defective frame of the bill, to afford the remedy sought. It sets out neither the character and nature of their respective claims, the amounts thereof, nor the circumstances under *263 which they arose; it is not shown that the fraud charged was known to each of them, that they severally became creditors in consequence of the false representations, or how and in what manner any one of them was imposed upon and misled thereby to his injury and damage, if so imposed upon at all, all of which statements would be essential to the maintenance of the suit at the instance of either one of them. The fraud complained of, if it existed, does not appear to be such as necessarily affected all of them alike, but it may or may not have induced each individual creditor to act according to the facts as presented in his particular case. One may have been induced to deal with the bank on account of the false appearances created by this imputed fraud, while another may have dealt with it irrespective of any such facts and without any knowledge of-their existence.. It is essential to an action on account of a wilful misrepresentation of a fact made to induce a party to act, that he should have acted upon it to his injury. Code, §§2958, 3174; Wright vs. Zeigler Bros., 70 Ga., 501. The precise question was before the Supreme Court of the United States in Scovill vs. Thayer, 105 U. S., 151, where it was said that u a creditor, who has been defrauded' by misrepresentations of the real capital of the company, has his remedy in an action of tort against all who participated in the fraud. But the wrong done him cannot entitle the entire body of creditors, who have not suffered from the alleged fraud, to recover of the entire body of stockholders who have taken no part in it.” Each case stands in this respect upon its own particular circumstances. And even where the suit is prosecuted for creditors by a receiver, acting under appointment from the court, it is essential that the pleadings set forth the facts entitling each of the creditors to maintain his action. High on Eeceivers, §201 and citations. It is well to remark that, in this respect, there is no difference in proceedings in courts of law and courts of equity.
2. A bank has much' the same lights to make an assign *264 ment that others have ; whenever it u surrenders its charter, or the use thereof, it may make, in good faith, an assignment of all its effects for the payment of its debts, as natural persons may, but it cannot thereby prevent such preference among its creditors as the law gives,” (Code, §1493); and this condition as to preferences giyen by law, we may add, is as true in the case of assignments made by natural as by artificial beings. Like other trusts, this is not allowed to fail for the want of a trustee to carry out its provisions; it cannot be defeated, provided it was yalid when made, for the want of an assignee, but the court in “ vacation or term time is authorized to appoint a receiver who shall execute the assignment.” Ib., §1495. The duty of this receiver, when appointed in place of the assignee, is such only as the assignee was bound to perform, viz., to execute the assignment; therefore the complainant stands in the shoes of Reynolds, the party to whom the bank assigned, with all’ his rights, privileges and powers, but with none others, either greater or less. The receiver thus appointed is, to all legal intents and purposes quoad the assignment and its execution, the original assignee.
3. It is urged that the assignor, which is the Dank, was not a participant in, but the victim of, the fraud charged in this particular instance; that the transaction out of which the fraud grew was exclusively between the defendant and Frost, Samuel & Co., to whom the defendant sold the banking house and assigned the charter, with all the rights and privileges of carrying on banking business according to its provisions; and that the defendant, before the re-organization of the corporation under the assigned charter, had drawn out of the bank all of its available assets and appropriated to his own use property which had belonged to it, amounting to some $40,000. But it should be remarked that this sale was made by the defendant to these parties after he had wound up the transactions of the bank, while it was under his management, and with a view to his *265 abandoning the business. It was consummated before the parties re-organized the bank; they well understood what the defendant was selling them, an<J what they were buying. It does not appear that the defendant participated in this re-organization, or that he had-any interest in the new concern, or was engaged in any way, or to any extent, in the management of its affairs, or that he held himself out, or suffered others to hold him out, to the public as having any connection whatever, therewith ; in fact, his card to the public, recommending the new organization and asking business for it as the successor of the one he controlled, distinctly announced the fact that he had severed his connection with it. Neither does it appear from any statement in the pleadings that Frost, Samuel & Co. misrepresented to their associates in this fresh venture the terms and conditions on which the value or character of the assets they had acquired from the defendant by the contract they made with him depended; on the contrary, it is evident that they were themselves the principal, if not, with trifling exceptions, the only stockholders, as well as the officers and managers of the bank. If others had any stock, it must have been quite a small amount, and it does not appear whether they acquired it by purchase or by-gift from Frost, Samuel & Co. Besides, the pleadings contain no intimation that these additional stockholders were induced to become such by misrepresentations made to them as to the value or condition of the capital stock of the bank. Frost, Samuel & Co. appear to have been the bank itself; the other stockholders adopted what they did, and do not seem to have dissented from their action in any respect. For a time the bank clid a profitable and lucrative business, and the bill charges that its insolvency was, in a great measure, occasioned by their withdrawing from it deposits made by customers, for their private purposes, and on account of individual speculations to the amount of $75,000. It does not appear, however, that defendant had anything to do with this misappropriation of its assets. *266 It is not easy to conceive how this invisible, intangible body could act automatically and independently of the agency of its members in conducting its operations, or how the body thus constituted could exist without the aid of its members. The attempt to separate the two and relieve the one from responsibility for the actions of the others is; in a legal sense, incomprehensible. The corporation can only act by and through its members and appointed agents; their action is necessarily its action, and the attempted distinction would seem to have no existence either in fact or in law.
4. The idea that a voluntary assignee can maintain suits for the benefit of creditors for whom he holds in trust the effects assigned, which the assignor could not maintain, is of modern origin; certain it is that he cannot do this according to the well-established principles of the common law. , That he may do it by special enactments in some of the states and by virtue of certain provisions made by particular laws of the United States, is not questioned. We are constrained, however, to hold that no such authority is, either directly or impliedly, conferred upon the assignee by any statute of this state. The act requiring a sworn schedule to be attached to the assignment, if it warranted the inference sought to be drawn from it, to which we are unable to agree, was passed subsequently to the execution of this assignment, and is therefore not applicable to it. The only power that the assignee has, as already shown, is to “execute the assignment,” and that the assignor can assign no right or title with which he has parted prior to the execution of his deed (and consequently that he cannot include this in the sworn schedule annexed thereto), will be abundantly shown in this judgment. Neither can we see how we can confer upon a voluntary assignee or his successor in the assignment, even though such successor derives his authority to act by appointment of the court, the enlarged powers given to a receiver appointed to collect and distribute the assets of an insolvent *267 bank upon a judgment of the pourt forfeiting its charter. This is a distinct authority from that growing out of a voluntary assignment; different principles apply to the two cases. In Dobbins vs. Walton and another, assignees, etc., 37 Ga., 614, this court held that the sections of the Code regulating the collection and distribution of the assets of a bank by a receiver appointed upon a judgment forfeiting its charter, did not apply in the case of a voluntary assignment by the bank of its assets to pay its debts according to the requirements of law
5. That parties who have combined to defraud others cannot invoke the aid of a court to enable them either to enforce or to rescind such an arrangement is well settled; “ex turpi eausa actio non oritur,” &nd.“inpari delicto mehor est conditio defendentisf’ are maxims long established and constantly acted upon both by courts of law and equity. One is simply the complement of the other, and the principle of both is embodied in our Code, §3093. Together they announce a principle which, as has been well said, ‘'commends itself no less to the moralist than the jurist, for there is no obligation upon any one to extricate a rogue from his own toils. On any other principle, a knave might gain, but could not lose, by a dishonest expedient, and inducements would be furnished to unfair dealing, if the law were to repair the accidents of an unsuccessful trick. A fraudulent grantee, therefore, is allowed to retain the property, .not for any merit of his own, but for the demerit of his confederate, in accordance with a wise and liberal policy, which requires that the consequences of a fraudulent experiment shall be made as disastrous as possible. The law endeavors to environ a debtor with all possible perils, and make it appear that hone-'ty is the best policy.” Bump Fraudulent Con., 3d ed., 1882, pp. 443, 444. Such being the policy of the law, and every facility being afforded a creditor or other party defrauded to impeach and set aside such transactions, and an assignee, as is an executor or administrator, being regarded as a trustee, not only for the *268 assignor in one instance, and the testator or intestate in the other, but a’so for creditors and others having claims upon either estate, it would not seem illogical or improper, in order to carry into effect this just and righteous policy, to invest the assignee or executor, or administrator, with the powers essential to the preservation and protection of every right conferred upon each class of his oestuis qtie trust, the creditors as well as those from whom the capacity to act is derived. Such a grant of power would, we are satisfied, not only serve to prevent fraud, but would dispense with quite a multiplicity of suits, and tend both to terminate and to diminish litigation. But however desirable this exercise of authority might be upon the part of an assignee or administrator, or others who hold fiduciary relations to both debtor and creditor, it has been so long and so uniformly denied, that we could not venture to assume its exercise unless it were, expressly authorized by the láwmaldng power, to which we most respectfully refer the question in all its various bearings.
“ A fraudulent transfer,” says Bump, pp. 444, 445, 446, “ is good ■ as against the grantor, his heirs, executors, administrators, agents, parties claiming under him, and his vendees and grantees. A fraudulent receipt to a person who owe3 money to the debtor is as binding as any other transfer.” The array of cases cited by him in the noles sustaining these positions is overwhelming. Again, the same careful and reliable compiler, on p. 484 of the same work, says, “ If the debtor subsequently makes an assignment, the creditors may still have the fraudulent transfer set aside, for he cannot transfer any right to his assignee which he himself does not possess.” This is likewise sustained by numerous cases cited in note 5.
. “ In general, a receiver, by virtue of his appointment, is clothed with only such rights of action as might have been maintained by the persons over whose estate he has been appointed and to whose rights for purposes of litigation he has succeeded.” High o.n Receivers, §§201,205, and cita *269 tions. The same rule as to the receiver’s or assignee’s right of action has been followed b.y our own. court in several instances, — 66 Ga., 609, 615, where it is laid down in terms, as it had been previously in 37 Id., 614, 619, that one acting as assignee, under a voluntary deed of assignment •for the benefit of creditors, stands as to suits “ in no better situation than the assignor.” The same principle is" recognized, though somewhat differently applied, in Moise vs. Chapman, 24 Ga., 249. The right of action belonging to the creditors, if to any one, against the defendant in this case constituted no part of the rights or assets of the bank, as we have seen, and consequently could not pass under its assignment to the complainant. This phase of the • case is fully met and covered by the judgment in Lane vs. Martin, 8 Ga., 468, where it is said, “ the right given the bill-holder to go upon the stockholder for the ultimate redemption of the bills is independent of any claim upon the assets of the corporation, one which may be asserted directly and in his own name, and which the assignee or receiver could not enforce, as it constitutes no part of the assets of the bank.” In this case, the bank has failed, and its assets were in the hands of a receiver, who had been appointed by an act of the general assembly. On the general question, see Brownell vs. Curtis, 10 Paige, 210; Osborne vs. Moss, 7 Johns. R., 161; Dorsey vs. Smithson, 6 Harris & Johns., 61; Hyde vs. Lynde, 4 N. Y., 387, 392; Bostwick vs. Menck, 40 N. Y. (1 Hand), 383 ; Thompson vs. Dougherty, 12 S. & R. (Penn.), 448; Yeatman vs. Savings Inst., 95 U. S., 764, 766, especially last cited page; Donaldson vs. Farwell, 93 Id., 631, particularly last paragraph of opinion; Jones vs. Yates, 9 Barn, and C. (17 Eng. C. L., 241) 532, 538, 539, 540, where the court, per Lord Tenterden, Chief Justice, say, in a case where assignees in bankruptcy were the plaintiffs, they “ are not aware of any instance in which a person has been allowed as plaintiff in a court of law to rescind his own act, on the ground that such act was a fraud upon some other personthat *270 what the party himself could not do, his assignees cannot; and that the only case in which the assignees may recover property which the bankrupt could not, is where the property upon the eve of bankruptcy was conveyed in fraud of the bankrupt law.
Several cases have been cited by the complainant .which are supposed to authorize this suit, especially’ Casey vs. Cavaroc, 96 U. S., 475, and Pillsbury vs. Kingon, 33 N. J. Eq., 287. Upon examination, however, it will be found that each case rests upon the peculiar provisions of statutes specially intended to confer the power upon assignees to maintain such for suits causes of action ; they are therefore not in conflict with the general rule, but have been taken out of its operation by virtue of the legislation designed to enlarge it so as to embrace the cases theretofore excluded from it. It is true that the reasoning of the court in the last case goes very far to abrogate the rule itself, and it may perhaps be fairly inferred that the result would have been the same had there been no legislative enactment expressly or impliedly authorizing it. The court, however, puts the case squarely upon the act of the New Jersey legislature. That act applies not only to suits by assignees, but to those by executors and administrators, and authorizes them to impeach transactions for fraud, wherever the creditors of the assignor or of the decedents could have done so.
In the strictly analogous case of fraud committed by the deceased in his lifetime, it has been held that while his creditors might set the transaction aside on that account, the executor or administrator could not do so in any case where the testator or intestate had no authority to bring an action. Our own decisions are full upon the question, and will dispense with the necessity of citing others from the English authorities and from nearly all the states of the Union. Crosby vs. DeGraffenreid, 19 Ga., 290; 20 Id., 452, 464, 465; 22 Id., 431. For a full and *271 able discussion of the question by Law. Judge, see R. M. Charlton's R., 383, 388.
Such being our view of1 the law applicable to this case, the verdict sought to be set aside could have been no other than it was. It is not binding upon the creditors of the bank or others having claims against it on account of the alleged fraudulent dealings between the defendant and those who became its owners and managers; and as to any rights they have against the defendant on this account, the voluntary assignee of the bank was not their trustee and had no authority to act for them in that behalf. This suit, as to them, is to all intents and purposes a suit between strangers; it is res inter alios acta. On this ground alone, and without any reference whatever to the other questions made upon the trial, which we have not considered, and as to which we express no opinion, we ratify the action of the superior court and order its judgment affirmed.